Tracy v. Tracy.

CATHARINE TRACY

v.

JOHN T. TRACY.

[Decided June 22d, 1900.   Filed February 11th, 1901.]

A married woman, living apart from her husband in another state, came to New Jersey, visited a friend for a few weeks, then returned to her former residence and visited there several weeks, after which she returned to New Jersey and took lodging in a boarding-house several months, and then ran a boarding-house of her own for a year. She then sold her boarding place and broke up housekeeping, and shortly afterwards filed her petition in New Jersey for divorce, and then spent the summer in the state of her former residence. Defendant was served with process as a non-resident. She testified that she came to the state without thought of getting a divorce, and with intention of making it her home.—*Held,* that the *animus manendi* necessary to give the court jurisdiction was not established, since the mere sworn statement was not sufficient to establish an *animus manendi,* in the absence of facts preceding and attending the change of residence to corroborate it.

Petition for divorce.  Heard *ex parte* on the coming in of the master's report, which was in favor of the divorce.

*Mr. Malcolm MacLear,* for the petitioner.

PITNEY, V. C.

The ground of the divorce stated in the petition is desertion, and I think that the evidence taken by the master satisfactorily establishes it.  But there is another matter, standing in the way of granting the petitioner relief, which does not seem to have struck the master as it does me.

The facts are these: The parties were both domiciled, at the time of their marriage and at the time of the desertion, in the State of New York.  Neither had ever lived in New Jersey.  The petitioner came to New Jersey on May 18th, 1897, and filed her petition for divorce on May 25th, 1899.  The defendant, at that time, resided in Rochester, in the State of

New York, and process not being served, the usual order of publication was made against him as a non-resident, and notice was served upon him by mailing it to him at his place of residence in Rochester. He did not appear, and the usual order of reference to a master to hear the petitioner's case *ex parte* was made.

It is abundantly established in New Jersey as held by me in the recent case of *McGean* v. *McGean, 15 Dick. Ch. Rep. 21,* that, in order to give the court the power to proceed and grant relief against the defendant under such circumstances, upon service out of the jurisdiction, the complainant must have been an actual *bona fide* domiciled resident of the state for the period of two years before the petition was filed. To acquire such a domicile in this and similar cases requires an actual change of domicile from another jurisdiction. And, repeating the language quoted in *McGean* v. *McGean* from the opinion of the court of errors and appeals in *Magowan* v. *Magowan, 12 Dick. Ch. Rep. 324:* "To effect a change of domicile, not only must the residence at the place chosen for the new domicile be actual, but to the *factum* of residence there must be added the *animus manendi.*"

The petitioner's maiden name was Cronin. She was born in the village of Cayuga Lake, Seneca county, New York. She there married a man by the name of Converse, and had by him one child, a son. Upon the death of her first husband, she moved to the city of Albany, New York, where the grandfather of her son, who appears to have been a man of means, resided, and while living there met the defendant, her present husband, and married him. His home was at Rochester, but he had a salaried position in the office of the secretary of state. He devoted little of his salary to the support of his wife, whose support and that of her son came mainly from her father-in-law Converse. Finally, in the fall of 1894, Converse declined any longer to extend his aid to the extent of supporting the defendant, and the latter, at that time, having lost his position and being without means, abandoned the petitioner. She continued to reside in Albany at a boarding-house, where she was living when her husband left her, until May, 1897, a period of

two and a half years.   There she made the acquaintance of a student named Blessing, whose parents lived a few miles in the country, and who had a sister, a Mrs. Nelson, living with her husband in Newark, New Jersey.

On the 18th of May, 1897, the petitioner came to Newark, with her son, and stopped at the house of Mr. and Mrs. Nelson until the 4th of July, when she left, with her son, and went to spend the summer with the mother of Mr. Blessing at her country home near Albany.   She spent the whole summer there, until the first week in September, except two or three weeks, when she visited her sister in Cayuga Lake.   She then returned to Newark, and took board with a Mrs. Osborne, at No. 10 Central avenue, and lived with her until May, 1898, when she started a boarding-house on her own account, and continued it until May, 1899, when she sold out her plant and broke up housekeeping.

On the 25th of May, 1899, she filed her petition for divorce. She then left New Jersey, and again spent the summer with Mrs. Blessing, near Albany, and her sister, and returned in the fall of 1899 to Newark, and remained there. until her case came on for hearing before the master in December, 1899.

She swears that she came to Newark because she had these friends here, and because it was disagreeable for her to live in Albany in a state of separation from her husband, and that she had no thought of getting a divorce when she came here, and that she intended to live and make her home here.   The master accepted this as sufficient proof of the *animus manendi.*

For reasons stated in *McGean* v. *McGean,* I am unable to accept this statement.

However, independent of that conclusion, I think that the time she had been residing here, before her petition was filed, did not amount to two years.   Her stay of six weeks at the house of Mr. Nelson, between the 18th of May and the 4th of July, 1897, seems to me to have been a mere visit, and to have none of the characteristics of an actual residence; and that her actual residence here commenced in September of 1897, less than two years before the petition was filed.   But as this view may be open to criticism and may result merely in the filing of

another petition, I prefer to deal with the case as if her residence, such as it was, commenced on the 18th of May, 1897.

Except that she kept a boarding-house for one year, and then abandoned it, it does not appear that the petitioner had any business whatever in New Jersey. Her son had an income—how much does not appear—from his grandfather's estate, and she has been living on that. Except the acquaintances above mentioned, she had nothing to bring her to New Jersey, except to obtain a divorce, and has nothing to keep her here after it shall be obtained. And thus the question is presented whether, under such circumstances, the mere sworn assertion by the party that he or she came to New Jersey without a thought of getting a divorce and intends to make New Jersey his or her home, is sufficient to establish the *animus manendi* which is necessary in order to give the court jurisdiction. I am of the opinion that it is not; that the common knowledge and experience of the court is that such sworn declarations are unreliable, and therefore insufficient; and that there must be something in the facts and circumstances preceding and attending the change of residence, and in the history of the life of the party, to corroborate the sworn statement, in order to warrant the belief that the purpose of the change was not merely that of obtaining a divorce, and that there was and is a real *animus manendi*.

I must decline to advise a decree.